1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

PATRIZIA SANCHEZ,

12

             Plaintiff,

13

      v.

14

KIM JOHNSON, Director of the California
Department of Social Services, in her

15

official capacity; ANGIE SCHWARTZ,
Deputy Director of the Children and

16

Family Services Division of the California
Department of Social Services, in her

17

official capacity,

18

             Defendants.

19

Case No.   1:22-CV-00965-JLT-SKO

ORDER DENYING PLAINTIFFS' REQUEST
FOR TEMPORARY RESTRAINING ORDER

(Doc. 4)

20

**I.    BACKGROUND**

21

       Patrizia Sanchez brings this lawsuit on her own behalf and on the behalf of minor siblings

22

J.G.1 and J.G.2, (collectively, "Plaintiffs") against Kim Johnson in her official capacity as the

23

Director of the California Department of Social Services and Angie Schwartz in her official

24

capacity as Deputy Director of the Children and Family Services Division of CDSS. (Doc. 1.)

25

Plaintiff Sanchez is the foster mother as well as the grandmother of J.G.1 and J.G.2 and hopes to

26

adopt them. (*Id.*, ¶¶ 1–3.) Both children were removed from the custody of their birth parents

27

after suffering serious abuse and neglect. (*Id.*, ¶¶ 15–18.) The abuse of the oldest child, J.G.1, was

28

so severe that he suffered anoxic brain injury and permanent brain damage due to severe

1

malnutrition. (*Id.*, ¶ 15.)

On March 17, 2021, Plaintiff Sanchez filed a civil complaint for damages in the Superior Court of Tulare County on behalf of J.G.1 against the County of Tulare, alleging a failure to discharge mandatory duties under California Government Code § 815.6. (Doc. 1, ¶ 17.) That litigation is still ongoing. (*Id.*) On June 23, 2022, the Tulare County Superior Court, Juvenile Division disqualified the County of Tulare, specifically the Child Welfare Services Division, from the dependency actions involving J.G.1 and J.G.2 on conflict-of-interest grounds. (*Id.*, ¶ 19; *see also* Declaration of Wyatt A. Vespermann ("Vespermann Decl."), ¶ 9.)

At a follow-up hearing on August 4, 2022, no alternative agency having been appointed to supervise the foster care of the minors, Hon. Glade Roper of the Tulare County Superior Court, Juvenile Division requested CWS find an alternative agency. (Vespermann Decl., ¶ 11.) As of the date of August 29, 2022, there has still been no appointment of an alternative agency to supervise J.G.1 and J.G.2's dependency proceedings. (*Id.*) Plaintiffs claim that "State law does not permit the Tulare County Superior Court, Juvenile Division to compel another counties' agency to take over J.G.1 and J.G.2's dependency proceedings." (Doc. 4-1 at 8.)

Plaintiffs allege that federal law, specifically Title IV-E of the federal Social Security Act, known as the Child Welfare Act, 42 U.S.C. § 671, requires that California designate a state agency to administer and/or supervise the administration of child welfare services, including foster services, to J.G.1 and J.G.2. (Doc. 1, ¶ 29.) Plaintiffs further allege that Defendants are violating the Child Welfare Act by failing to make reasonable efforts to place a foster child in a timely manner in accordance with a permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child. (*Id.*, ¶ 24 (citing 42 U.S.C. § 671(a)(15)(C).) Plaintiffs claim that these failures "deprive[] Plaintiffs of their federal rights, including the familial association rights derived of the 14th Amendment, as well as privileges and immunities under color of state law in violation of 42 U.S.C. § 1983." (*Id.*, ¶ 26.)

On August 29, 2022, Plaintiffs filed a request for a temporary restraining order that would "temporarily enjoin Defendants . . . from their ongoing failure to use reasonable efforts to move J.G.1 and J.G.2, eligible children in foster care, toward permanent placements by designating an

appropriate state agency to administer and/or supervise the administration of child welfare services to J.G.1 and J.G.2." (Doc. 4-3.) Plaintiffs contend they are being irreparably harmed by the lack of speedy action to provide them with a permanent plan of adoption. (*See* Doc. 4-1 at 9 ("Any further delay needlessly keeps these children in the foster system and inhibits their ability to develop lifelong bonds with their caretaker that will support them into adulthood.").)

Although the Court is sympathetic to the situation described in the Complaint, the Court concludes that it does not possess authority to afford the relief sought. As a result, the request is **DENIED**.

## II.    STANDARD OF DECISION

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *R.F. by Frankel v. Delano Union Sch. Dist.*, 224 F. Supp. 3d 979, 987 (E.D. Cal. 2016). Injunctive relief is an "extraordinary remedy, never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. To prevail, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent preliminary injunctive relief; (3) that the balance of equities tips in the moving party's favor; and (4) that preliminary injunctive relief is in the public interest. *Id*. Local Rule 231 governs the filing of requests for TROs in this District.

A preliminary injunction "can take two forms," either a "prohibitory injunction" or a "mandatory injunction." M*arlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009). A "prohibitory injunction" simply "preserve[s] the status quo pending a determination of the action on the merits," while a "mandatory injunction" "orders a responsible party to take action." *Id*. (quotation omitted). In the context of injunctive relief, "[t]he status quo means the last, uncontested status which preceded the pending controversy." *Garcia v. Google, Inc*., 786 F.3d 733, 740 n.4 (9th Cir. 2015) (internal quotation omitted). Mandatory injunctions are "particularly disfavored," and a plaintiff's burden is "doubly demanding" when seeking one. *Id*. "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Marlyn Nutraceuticals*, 571 F.3d at 879

1    (internal quotation marks and citation omitted). Consequently, in seeking a mandatory injunction,

2    plaintiffs must "establish that the law and facts *clearly favor*" their position. *Garcia*, 786 F.3d at

3    740 (emphasis in original). The nature of the relief sought here—an order requiring action by the

4    Defendants—arguably triggers the heightened mandatory injunction standard.

5                                  **III.    ANALYSIS**

6              Evaluation of the pending request turns on whether there is a likelihood of success of the

7    merits of the action. Plaintiffs argue that Defendants are currently violating the Child Welfare Act

8    in two ways: (1) by failing to designate a state agency to administer and/or supervise the

9    administration of the approved state plan for Plaintiffs J.G.1 and J.G.2 pursuant to 42 U.S.C. §

10   671(a)(2); and (2) by failing to make "reasonable efforts" to place J.G.1 and J.G.2 in a timely

11   manner in accordance with a permanency plan, and to complete whatever steps are necessary to

12   finalize their permanent placement pursuant to 42 U.S.C. § 671(a)(15)(C). (Doc. 4-3 at 2; Doc. 1,

13   ¶¶ 24–26, 28.) Generally, the Child Welfare Act establishes a federal reimbursement program for

14   certain expenses incurred by the States in administering foster care and adoption services. *Suter v.*

15   *Artist M*., 503 U.S. 347, 350–51 (1992). "The Act provides that States will be reimbursed for a

16   percentage of foster care and adoption assistance payments when the State satisfies the

17   requirements of the Act." *Id*. at 351 (citing 42 U.S.C. §§ 672–674, 675(4)(A) (1988 ed. and Supp.

18   I)). To participate in the reimbursement program, a state must submit a plan to the Secretary of

19   Health and Human Services for approval by the Secretary that meets specific statutory

20   requirements. 42 U.S.C. §§ 670, 671. Here, as mentioned, the Plaintiffs rely on two of those

21   statutory requirements set forth at 42 U.S.C. §§ 671(a)(2), (a)(15), which provide as follows:

22            (a) Requisite features of State plan

23            In order for a State to be eligible for payments under this part, it
              shall have a plan approved by the Secretary which—
24
              . . . . .
25
              (2) provides that the State agency responsible for administering the
26            program authorized by subpart 1 of part B of this subchapter shall
              administer, or supervise the administration of, the program
27            authorized by this part;

28            . . . . .

                                    4

(15) provides that—

. . . . .

(B) [with certain exceptions] reasonable efforts shall be made to preserve and reunify families—

(i) prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and

(ii) to make it possible for a child to safely return to the child's home;

(C) if continuation of reasonable efforts of the type described in subparagraph (B) is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan (including, if appropriate, through an interstate placement), and to complete whatever steps are necessary to finalize the permanent placement of the child . . .

42 U.S.C. §§ 671(a)(2), (a)(15). To the extent Plaintiffs' request for injunctive relief is premised on 42 U.S.C. § 671(a)(15)(C), this provision cannot support the issuance of a TRO. The Supreme Court held in *Suter* that the "reasonable efforts" clause set forth in 42 U.S.C. § 671(a)(15) does not create a private right of action enforceable in federal court either directly under the Act or by way of an action brought under 42 U.S.C. § 1983. 503 U.S. at 363–64; *see also Sanchez v. Johnson*, 416 F.3d 1051, 1057 n. 5 (9th Cir. 2005).

The Complaint and the motion for the TRO both invoke 42 U.S.C. § 671(a)(2), which, as quoted above, requires that to be approved by the Secretary of Health and Human Services, a state plan must provide "that the State agency responsible for administering the program authorized by [the Child Welfare Act] shall administer, or supervise the administration of, the program . . ." Even assuming this Court has the authority to force the State of California to appoint a subordinate agency to administer foster care services for J.G.1 and J.G.2 under § 671(a)(2), it is unclear from the papers how any such relief could be divorced from the substantive requirements of § 671(a)(15). For example, Plaintiffs are requesting an order that would "temporarily enjoin Defendants . . . from their ongoing failure to use reasonable efforts to move J.G.1 and J.G.2, eligible children in foster care, toward permanent placements by

5

designating an appropriate state agency to administer and/or supervise the administration of child welfare services to J.G.1 and J.G.2." (Doc. 4-3 at 2.) In other words, the mere appointment of an agency to supervise J.G.1 and J.G.2's foster care services would not address the harm they allegedly face—the absence of a permanent placement—without the Court also taking action to enforce § 671(a)(15).[1] This, as discussed, the Court cannot do because that provision does not create a private right of action. *See Suter*, 503 U.S. at 363–64. Accordingly, the motion before the Court fails to establish a likelihood of success on that legal claim, let alone that the law and facts clearly favor Plaintiffs' position.

Finally, though the Court does not base its ruling on this issue at this stage of the case, it has serious questions about Plaintiffs' contention of irreparable harm. They claim to be harmed by their current situation because "[a]ny further delay needlessly keeps these children in the foster system and inhibits their ability to develop lifelong bonds with their caretaker that will support them into adulthood." (Doc. 4-1 at 9.) But Sanchez is their grandmother and is already their foster parent. The present record does not explain how the procedural actions Plaintiffs demand will materially alter their circumstances nor why the extraordinary relief of an injunction is required at this time.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the request for a temporary restraining order (Doc. 4) is **DENIED**.

IT IS SO ORDERED.

Dated:   **August 30, 2022**

UNITED STATES DISTRICT JUDGE

---

[1] The same problem would appear to befall any attempt to premise the TRO request on familial association rights under the 14th Amendment. The Complaint invokes those rights almost in passing, (*see* Doc. 1 at ¶ 26, p. 7), but it is unclear how the Court could order the relief requested based on this Constitutional concept without also acting to enforce the provisions of § 671(a)(15).

6